UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CJ PRODUCTS LLC and ONTEL PRODUCTS :
CORPORATION, : **MEMORANDUM & ORDER**
:
                                 Plaintiffs, : 10-CV-5712 (ENV)(JO)
:
        -against- :
:
CONCORD TOYS INTERNATIONAL, INC. and :
HAI WEN PAN, :
:
                              Defendants. :
------------------------------------------------------------- x

**VITALIANO, D.J.**

    Plaintiffs CJ Products LLC and Ontel Products Corporation commenced this copyright action on December 9, 2010, against defendants Concord Toys International, LLC and Hai Wen Pan. On December 10, 2010, the Court granted <u>ex parte</u> an order temporarily restraining defendants from violating "pillow pet" copyrights, commanding the Marshal to seize alleged "knock-off" products being sold by defendants, and directing defendants to show cause on January 6, 2011 why a preliminary injunction should not be entered continuing relief. At the scheduled preliminary injunction hearing, all parties rested on the papers they had previously submitted to the Court. For the reasons that follow, plaintiffs' request for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure is granted. This Memorandum and Order constitutes the Court's findings of fact and conclusions of law.

## DISCUSSION

**A. Background**

    Plaintiff CJ Products LLC ("CJ") is a gift and toy company involved in the development, production, sale, and distribution of gift and toy products. One of its most popular products is a

1

line of folding stuffed animals that are also functionally pillows. These products are branded with the trademarks MY PILLOW PETS, IT'S A PILLOW PET, and MY PILLOW PETS ITS YOUR PILLOW AND A PET, IT'S A PILLOW PET, and were introduced into the marketplace in 2003. Plaintiff Ontel Products Corporation ("Ontel") is a marketer of consumer products. CJ granted Ontel the exclusive license to manufacture, market, advertise, promote, sell, offer to sell, and distribute the pillow pet line of products. CJ also granted Ontel an exclusive license to all related intellectual property. Defendant Concord Toys International, Inc. ("Concord") is a wholesaler engaged in the business of selling toys. Pan is the president of Concord.

After discovering that defendants were selling merchandise nearly identical to the pillow pet line of products, plaintiffs retained a private investigative and security firm, Allegiance Protection Group, Inc. ("Allegiance"). Allegiance purchased products from defendants for the purpose of determining their authenticity. After confirming that the products were imitations of the pillow pet line of products, plaintiffs filed the instant action.

## B. Preliminary Injunction

Plaintiffs seek a preliminary injunction, enjoining and restraining defendants and their agents from copying, distributing, or selling any plush toy substantially similar to the pillow pet line of products, during the pendency of this action. Whether to grant or deny a preliminary injunction in these circumstances lies within the sound discretion of the district court. S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 237 (2d Cir. 2001); P & G v. Ultreo, Inc., 574 F. Supp. 2d 339, 344 (S.D.N.Y. 2008). It is well-settled that a "party seeking a preliminary injunction must demonstrate '(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the

movant's favor.'" MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004) (quoting Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96 (2d Cir. 2002)).

In addition, where the moving party requests a "mandatory" preliminary injunction—that is, one that alters the status quo by commanding some positive act, as opposed to just maintaining the status quo—or if the injunction will provide the moving party with "substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," the moving party "must satisfy a higher standard, by showing a clear or substantial likelihood of success." Bose Corp. v. Silonsonnic Corp., 413 F. Supp. 2d 339, 341 (S.D.N.Y. 2006) (quoting Tom Doherty Assocs. v. Saban Entm't, 60 F.3d 27, 33-34 (2d Cir. 1995); (internal quotations omitted)). In the case at bar, the Court need not tarry to address which standard is more appropriate, because, regardless which is applied, the result is the same.

### C. Likelihood of Success on the Merits

To succeed on the merits of a copyright infringement claim, a plaintiff must establish both (1) ownership in a valid copyright, and (2) infringement of that copyright by the defendant. See, e.g., Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985). In their opposition papers, defendants do not confront the infringement prong at all. More to the point, at the preliminary injunction hearing, though given the opportunity to do so, defendants did not submit any evidence challenging plaintiffs' allegation of infringement; nor did they seek a continuance to do so. Since defendants, at this stage, do not contest that they engaged in unauthorized copying of the pillow pet product line, the only issue before the Court is whether plaintiffs have ownership of a valid copyright, and that claim defendants vigorously contest.

To begin, it is a prerequisite to copyright validity that a work be registered with the

Copyright Office before a party may bring suit for copyright infringement of that work. See 17 U.S.C. § 411(a). Plaintiffs have submitted evidence that CJ owns various copyrights related to the pillow pet line of products, including the following 26 certificates of registration: VA001674376, VA001674379, VA0001678130, VA0001679223, VA0001678142, VA0001665417, VA0001674366, VA0001678132, VA0001674374, VA0001678144, VA0001674364, VA0001665418, VA0001674373, VA0001674372, VA0001678138, VA0001674371, VA0001679221, VA0001674375, VA0001678146, VA001674368, VA0001674377, VA0001678140, VA0001674365, VA0001715275, VA0001715272, VA0001715248. (Wright Decl., Exhibit C.)[1] In addition, the Court takes judicial notice of a total of 40 copyright registrations by CJ (including the 26 certificates noted above), as published in the Copyright Office's official registry.[2] See Fed. R. Evid. 201(b)(2) (courts may take judicial notice of facts within the public domain and public records if such facts and records are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). See also Island Software & Computer Serv. Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) (district courts are entitled to take judicial notice of federal copyright registrations, as published in the Copyright Office's registry); U2 Home Entm't, Inc. v. Kylin TV, Inc., 06-CV-02770, 2007 U.S. Dist. LEXIS 50131, at *10-11 (E.D.N.Y. July 10, 2007) (same); SimplexGrinnell LP v. Integrated Sys. & Power, Inc., 642 F. Supp. 2d 167, 188

---

[1] References to "Wright Decl." denote the declaration of Brian Wright in support of Plaintiffs' Ex Parte Motion for Order to Show Cause for Preliminary Injunction with Temporary Restraining Order, Seizure Order and Order to Restrain Transfer of Defendants' Assets.

[2] CJ's federal copyright registrations are as follows: VA0001674371, VA0001678140, VA0001678142, VA0001715280, VA0001674364, VAu001023539, VA0001715255, VAu001023541, VA0001679221, VAu001023537, VA0001674365, VA0001665417, VA0001665418, VA0001674375, VA0001674370, VA0001715256, VA0001715250, VA0001715257, VA0001674376, VA0001715270, VA0001715272, VA0001674366, VA0001674373, VA0001678146, VA0001674379, VA0001678132, VA0001715275, VA0001715276, VA0001674372, VA0001715248, VA0001674368, VA0001678130, VA0001715277, VA0001715252, VA0001715278, VA0001674374, VA0001678138, VA0001674377, VA0001679223, VA0001678144.

(S.D.N.Y. 2009) (same). Cf. Duluth News-Tribune v. Mesabi Publ'g Co., 84 F.3d 1093, 1096 n.2 (8th Cir. 1996) (taking judicial notice of trademark registrations published in Patent and Trademark Office's registry).

The Copyright Act also provides that a "certificate of a [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). If the certificate of registration is not obtained within five years of first publication, the work is not entitled to the statutory presumption of validity and the "evidentiary weight to be accorded the certificate . . . shall be within the discretion of the court." Id. Thirty-five of the 40 certificates of copyright registration on file with the Copyright Office were obtained within five years of first publication and five were obtained more than five years after first publication.[3]

As a result, pursuant to § 410(c) of the Copyright Act, CJ's 35 certificates of registration that were issued within five years of first publication are prima facie evidence that the copyrights in those products are valid, shifting the burden to defendants to prove the contrary. See Hasbro, 780 F.2d at 192 (citing Oboler v. Goldin, 714 F.2d 211, 212 (2d Cir. 1983)). But defendants have offered no evidence whatsoever tending to show that the certificates of registration issued to CJ are invalid, or that CJ does not in fact own the copyrights in the products covered by those registrations. Instead, defendants contend that "there are a lot of similar products which have elements of Plaintiffs' Copyrighted Works, on the market, produced, distributed and sold by different companies which may not be authorized to produce similar products by the plaintiffs," and as such "plaintiffs are not original authors of Copyrighted Works." (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction, at 14.) Notwithstanding defendants' assertions, the mere presence of other similar products does not

---

[3] The records on file in the Copyright Office's official registry include the date of creation and date of publication.

undercut the legitimacy of plaintiffs' copyrights. It certainly does not rebut the presumption of validity. To rebut the presumption that plaintiffs' copyrights are indeed valid, defendants are required to make a showing that the certificates of registrations are somehow invalid or that CJ does not in fact own the copyrights. See Hasbro, 780 F.2d at 192. They have not come close to shouldering that burden.

Regardless of anything else, there is a different analytical focus in evaluating the five copyright registrations that were issued to CJ more than five years after first publication. Under the Copyright Act, those works are not entitled to the statutory presumption of validity and the "evidentiary weight to be accorded the certificate[s] . . . [is] within the discretion of the court." 17 U.S.C. § 410(c). In light of the totality of admissible evidence presented on this motion for preliminary injunction, however, the Court, in its discretion, concludes that these five certificates shall also be considered as prima facie evidence of valid copyright. See Michael Grecco Photography, Inc. v. Everett Collection, Inc., 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) (certificates of registration issued more than five years after publication are prima facie evidence of valid copyrights because defendants did not offer any evidence suggesting that the copyrights were invalid); Yurman Design, Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 515-516 (S.D.N.Y. 2003) (same); Telerate Sys., Inc. v. Caro, 689 F. Supp. 221, 227 n.7 (S.D.N.Y. 1988) ("Even if the certificate were . . . issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). Given that the overwhelming majority of the designs within this product line are clearly entitled to the statutory presumption of validity, the Court finds that it is especially appropriate to exercise the discretion accorded it by statute and afford the same weight to the five certificates registered outside the protected harbor timeline.

Plaintiffs currently market and sell 33 versions of the pillow pet product line that are all functionally the same—they are a combination of a stuffed animal and a pillow. That the "Buzzy Bumble Bee" design, for example, was registered within the five-year period and the "Puffy Duck" design was not, is substantively insignificant. Both products are made and marketed as part of the identical product line. All in all, the Court treats the certificates of registration for the five stale registration products as prima facie evidence of their validity, despite the fact that they were registered outside the five-year period. Since defendants have not submitted on the motion for preliminary injunction a scintilla of evidence to cast doubt on the validity of any of the subject copyrights, except for the invitation to eyeball other similar stuffed animal products, the presumption of validity has certainly not been rebutted. Stated another way, "absent any reason or basis to rebut the presumption of validity," all of CJ's certificates of registration, at this stage, will be deemed valid. Michael Grecco Photography, 589 F. Supp. 2d at 382 (internal citation omitted).

Since plaintiffs have established for preliminary injunction purposes ownership in valid copyrights and defendants do not contest CJ's claim that they have infringed those copyrights, the Court finds that plaintiffs have demonstrated a substantial likelihood of success as to these claims.

### D. Irreparable Harm

Citing to well-established case law in this circuit, plaintiffs argue that irreparable harm is presumed where a plaintiff makes out a prima facie case of copyright infringement. See, e.g., Pem-America, Inc. v. Sunham Home Fashions, LLC, 83 Fed. Appx. 369, 372 (2d Cir. 2003) ("'[G]enerally when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed.'") (citing ABKCO Music, Inc. v. Stellar Records, Inc., 96

F.3d 60, 64 (2d Cir. 1996)); Hasbro, 780 F.2d at 192 ("Irreparable harm may ordinarily be presumed from copyright infringement."). See also Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96-97 (2d Cir. 2002) (the rationale behind this presumption is that demonstrating a likelihood of success of copyright infringement means that the moving party will obviously suffer considerable loss from sale or dissemination of the infringing product). Such showing, however, does not foreclose further inquiry. Determining that the Supreme Court had "abrogated" the "longstanding standard" for preliminary relief in eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006), the Second Circuit held that a plaintiff is now required to show, in addition to likelihood of success on the merits: (1) a likelihood of irreparable harm; (2) that "remedies available at law . . . are inadequate"; (3) that the balance of hardships tip in his favor; and (4) that the "public interest would not be disserved" by issuing preliminary relief. Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (quoting eBay, 547 U.S. at 391). The court explicitly limited its holding to "preliminary injunctions in the context of copyright cases," but also generally saw "no reason that [the reasoning] would not apply with equal force to an injunction in any type of case." Id. at 78 n.7. Accordingly, even though plaintiffs have shown a substantial likelihood of success on the merits, the Court must still analyze the request for a preliminary injunction by applying the four-factor test of eBay and Salinger.

    1. <u>Likelihood of Irreparable Harm and the Inadequacy of Remedies at Law</u>

"'The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction.'" Rex Med. L.P. v. Angiotech Pharms. (US), Inc., 10-CV-8746, 2010 U.S. Dist. LEXIS 129195, at *9 (S.D.N.Y. Dec. 1, 2010) (quoting Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002)). A party can establish irreparable harm "if it shows

that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." Id. at *9-10 (internal quotations and citation omitted). Monetary loss is generally insufficient; the movant must show "'evidence of damage that cannot be rectified by financial compensation.'" Id. (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)); see also Tom Doherty Assocs., 60 F.3d at 37.

Plaintiffs have satisfactorily established that they are in fact suffering irreparable harm by defendants' continued sale of items that are identical to the copyrighted works. "In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion." Salinger, 607 F.3d at 81 (citing Merkos L'Inyonei Chinuch, 312 F.3d at 96-97). Courts generally issue injunctions in this context because "'to prove the loss of sales due to infringement is . . . notoriously difficult.'" Id. (quoting Omega Importing Corp. v. Petri--Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971) (Friendly, C.J.)). There is no question that the products are identical. A side-by-side comparison at the preliminary injunction hearing, invited by both parties, revealed no substantial differences between the original designs and defendants' counterfeits. It is unchallenged that CJ has spent substantial time, money, and effort in building and developing customer recognition, awareness, and goodwill for these products. From September 2009 to March 2010, for example, the company spent $1,350,000.00 on media and advertising. (Wright Decl., at 3.) It currently spends approximately $1 million a month to continue to expand its customer base. (Id.) Flooding the market with counterfeit products will not only result in lost sales, but perhaps more importantly, it will impair plaintiffs' reputation. Given that the products are virtually identical, it is highly likely that consumers will confuse them. This is particularly troubling given the

potential that defendants' products may pose a potential public health risk, see Part D.2, infra, thus injuring plaintiffs' reputation even further. With all of its permutations, a harm of this nature is undoubtedly a harm that cannot be redressed by the monetary damages available at law.

2. Balance of Hardships Including the Public Interest

"A court must consider the balance of hardships between the plaintiff and defendant and issue [an] injunction only if the balance of hardships tips in the plaintiff's favor." Salinger, 607 F.3d at 80 (citing Winter v. Natural Res. Defense Council, 555 U.S. 7, 129 S. Ct. 365, 374, (2008)); eBay, 547 U.S. at 391, 126 S. Ct. at 1839. The Court finds that the balance of equities here clearly favors plaintiffs. Defendants argue that an injunction affords plaintiffs a monopoly and hinders, if not bars, competition. Quite to the contrary, an injunction is necessary to stop defendants from infringing on plaintiffs' products, that is, competing unlawfully. As noted previously, defendants have never denied that they are infringing on plaintiffs' copyrights. Defendants are therefore profiting from the manufacture and sale of goods based on designs they did not create or invest time and money to promote; nor have they been otherwise authorized to use. The balance of equities at the preliminary injunction stage tips decidedly in plaintiffs' favor.

Having concluded that all three other factors favor injunctive relief at this stage, the Court's sole remaining task is to ensure that granting plaintiffs' motion for preliminary injunction would not disserve the public interest. And the public interest, in fact, makes the case far more compelling. Since the pillow pet product is both a children's toy and a pillow, it is subject to numerous federal and state health and safety regulations, a fact that too is uncontested. Plaintiffs' products bear a label which indicates that "all Pillow Pet plush toys have been inspected to meet or exceed U.S.A., U.K. and European safety requirements." (Wright Decl., at

9.) The label also includes a description of the material composition of the product; a certification by the manufacturer that "the materials are described in accordance with law;" the name, address, and registration number of the importer; product care instructions; and age appropriateness information. (Id.) Defendants' products on the other hand, only contain one label, which indicates "Made in China and CE." (Id. at 9-10.)[4] Nothing on the label certifies compliance with any United States laws or regulations. Even more disturbing, some of defendants' products were observed without any labels at all. (Id.) Again, as to these evidentiary claims, despite opportunity to contest, defendants demurred. In light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and safety requirements, the public interest strongly favors plaintiffs. It is not lost on this Court that without a preliminary injunction in place, potentially hazardous products will continue to be sold in mass quantities and end up in the arms of children across the country.

Since plaintiffs have established a substantial likelihood of success on the merits as well as satisfied the four-part test required by Salinger, the Court grants the motion for preliminary injunction.

## CONCLUSION

For all the foregoing reasons, the motion of plaintiffs for a preliminary injunction is granted. Accordingly, the temporary restraining order entered on December 10, 2010 is vacated and a preliminary injunction is entered for the pendency of this action, enjoining and restraining defendants, their agents, servants, employees, and all persons acting in concert with or under the direction of the defendants who receive actual notice of the injunction, from manufacturing,

---

[4] The "CE" marking certifies only that the product has met EU consumer safety, health, and environmental requirements. (Wright Decl., at 10.)

copying, distributing, or selling any plush toy substantially similar to products covered by the following copyrights: VA0001674371, VA0001678140, VA0001678142, VA0001715280, VA0001674364, VAu001023539, VA0001715255, VAu001023541, VA0001679221, VAu001023537, VA0001674365, VA0001665417, VA0001665418, VA0001674375, VA0001674370, VA0001715256, VA0001715250, VA0001715257, VA0001674376, VA0001715270, VA0001715272, VA0001674366, VA0001674373, VA0001678146, VA0001674379, VA0001678132, VA0001715275, VA0001715276, VA0001674372, VA0001715248, VA0001674368, VA0001678130, VA0001715277, VA0001715252, VA0001715278, VA0001674374, VA0001678138, VA0001674377, VA0001679223, VA0001678144; and it is further

ORDERED that for the pendency of this action, defendants, their agents, servants, employees, and all persons acting in concert with or under the direction of the defendants who receive actual notice of the injunction, are prohibited from secreting, altering, destroying, or otherwise disposing of any inventory of such infringing products, and the molds and designs, and books and records relating thereto; and it is further

ORDERED that plaintiffs are authorized, under the supervision and with the assistance of the United States Marshal, to take all necessary steps to seize, remove, and secure any inventory of any plush toy substantially similar to products covered by certificates of registration numbered VA0001674371, VA0001678140, VA0001678142, VA0001715280, VA0001674364, VAu001023539, VA0001715255, VAu001023541, VA0001679221, VAu001023537, VA0001674365, VA0001665417, VA0001665418, VA0001674375, VA0001674370, VA0001715256, VA0001715250, VA0001715257, VA0001674376, VA0001715270, VA0001715272, VA0001674366, VA0001674373, VA0001678146, VA0001674379,

VA0001678132, VA0001715275, VA0001715276, VA0001674372, VA0001715248, VA0001674368, VA0001678130, VA0001715277, VA0001715252, VA0001715278, VA0001674374, VA0001678138, VA0001674377, VA0001679223, and VA0001678144; the molds and designs; and books and records (print or computer) relating thereto from defendants at 53-20 Flushing Avenue, Maspeth, NY 11378, and any other location under said defendants' control within this state, including the use of reasonable force to break, open, enter, and search for said property and place any object seized with an appropriate storage facility; and it is further

ORDERED that all books and records seized pursuant to this Memorandum and Order shall be copied at plaintiffs' expense and the copies shall be returned within two business days to the party from whom the originals were seized; and it is further

ORDERED that anyone interfering with the execution of this order is subject to arrest by the United States Marshal or his deputies; and it is further

ORDERED that plaintiffs will account completely for all property seized and shall compile a written inventory of all such property and shall provide a copy to the United States Marshal, who shall include such a copy with his return to the Court; and it is further

ORDERED that plaintiffs will act as substitute custodian of any and all property seized and shall hold harmless the United States Marshal Service and its employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of the defendants' property, including third-party claims; and it is further

ORDERED that the order of attachment entered on December 10, 2010 will continue, attaching all bank and merchant accounts of defendants, and enjoining defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who

receive actual notice, from transferring or withdrawing any funds from those accounts, except in the ordinary course of lawful business, pending a further order of this Court; and it is further

ORDERED that the security bond in the amount of $100,000.00 posted by plaintiffs be maintained pending a further order of this Court.

**SO ORDERED.**

Dated: Brooklyn, New York
January 19, 2011

_____
ERIC N. VITALIANO
United States District Judge